I'm pleased to court. My name is Richard Spira, and I represent the appellants. As the court knows, we raised three points that we found the district court erred. If the court has a preference in which order they'd like me to address those issues, I'm happy to follow that. Otherwise, I just intend to start with the primary issue, which was the appellant's belief that the district court erred in applying the rent escalation clause to both the base rent that was paid to the landlord and the newly acquired debt servicing costs on the mortgage that was acquired by the appellants and defendants. The appellants contended that, pursuant to the plain language of the Third Amendment to the lease, the rent escalation clause should apply only to the base rent. And there's one critical fact that I'm not sure that we were good enough in pointing out in the briefs, but it's very critical to understand how we got from the original lease to the Third Amendment lease and why it is that the appellant's position is correct. And that fact is that initially, when the lease was first drawn, there were two components of the rent that were paid to the landlord. There was a base rent, and then the landlord was also paying the debt service costs on an existing mortgage of $1.2 million. So the base rent was $21,500, and then paid to the landlord, to Baker directly, with an additional $14,700. And so you have a base rent and additional permitted mortgages. Now, what changed between the First Amendment to the lease and the original lease, and then the Third Amendment to the lease, is the defendants refinanced and got a $3.2 million lease that they paid directly to the bank. So in 1990, 1991 through 1993, the only thing that was being paid to the landlord was the base rent. The debt service costs were now being paid to Union Bank. And what the court found was that the multiplier should be applied to not only what was being paid to the landlord, but it should be applied to the debt service costs on the $3 million that was being paid to Union Bank. And that's why the Third Amendment to the lease says in Paragraph 7, it defines a rent escalation clause, Paragraph 7.0, and that's at page 178 of the excerpts of record. It says the rent escalation clause shall be applied to the base rent. And that makes sense because that's all that's going to the landlord now. There are no debt service costs being paid to the landlord, and that's what's different. Do you think that Third Amendment is a sort of a recital rather than amending the basic setup of how the rent would be paid? No, it definitely is not a recital. There was a recital section, and Paragraph 7 is not in that. And then there was a preamble that says, in light of the above recitals, the parties agreed to amend the lease as follows. And they list out Paragraphs 1 through whatever they list, and Paragraph 7 is in that second section. And, in fact, it's precisely because of the change in circumstances that that Third Amendment came into existence. It's now we don't have rent and debt service costs being paid to the landlord. We just have the basic rent being paid to the landlord. We've taken out a new loan that's being paid to Union Bank. So that's why it makes perfect sense in that Paragraph 7.0 of the Third Amendment lease to say the rent escalation clause applies to the base rent. Now, before that time, the escalation applied to the whole package of rent, correct, even that portion that was being paid on the then current indebtedness? Right, because that was being paid to the landlord. The landlord paid the debt service costs, and then my clients paid the landlord the $14,700 of that debt service. So the landlord was getting the escalation, the cost of living increase on the whole 36,000? Two hundred, that's correct. Why would the landlord agree to take a smaller amount? Because the landlord now is not having to pay the debt service costs. That's been extinguished. In fact, he's now gotten $200,000 of that original debt paid off with the $3.2 million financing as well. So when he was having to pay it originally, that made some sense. You're going to multiply the amount paid to the landlord, and that's what the lease applies. You're looking at the amount paid to the landlord. He's getting an escalation on that. The part that the landlord was paying over to the bank on the indebtedness wasn't increasing according to some cost of living amount. I'm sorry. Okay, the landlord's taking in $21,000, and you said paying $14,000 over to the bank on the indebtedness on him. But the escalator clause applies to the whole thing, even though the $14,000 amount being paid over to the bank doesn't get any larger due to cost of living. So he's getting an increase on the whole $36,000, and afterwards he's getting an increase on only the $21,000. He was getting an increase on the whole $36,000. In fact, that's the way that the letter from Ellen Gordon, the bankruptcy trustee, applied it. And recall in December of 1990, the party said we're going to figure out how to apply this now. And Ellen Gordon took the multiplier and applied it times the $36,200, which was the $21,500 rent, and the initial $14,700 that the landlord initially was paying for debt service costs. And maybe she agreed with the question you just asked that it made sense that the landlord not have a reduction, and that's why she applied it that way. But the district court did not adopt Ms. Gordon's analysis either. And our position is if you don't look at the plain language of the Third Amendment to the lease, which says it's applied to the base rent, at least as a fallback, the only other option is to apply it the way Ms. Gordon did, because the parties agreed, as the plaintiffs conceded in their trial brief at pages 64 and 65, that there was a meeting held with the trustee. They agreed that the way that Ms. Gordon applied the formula in her letter, which is at ER 344, that that would be the way the formula would be applied. And Ms. Gordon did not apply it to the entire debt service costs of the $3.2 million. She applied it to the original base rent, and then she applied it to the additional $14,700. If you look at those letters, she applied it as a multiplier times $36,200. I've got to say, in getting ready for this case, I just fell off the truck, because I can't figure out. It appeared to me that the district court was saying whatever she did must be what the parties agreed to. I couldn't figure out what she did. What did she do? I can help you with that. If you look at the 344.12349, it says she applied $36,200 times, and there's a multiplier. She sets out that formula right at the start. So that's very clear if you just look at those pages. The one thing we know she did not do, she didn't apply it times the $51,000 in debt service costs. If you look at Exhibit 200, which is the plaintiff's expert report, that shows that after three months, the expert was applying the multiplier times a debt service cost of $51,000-some-odd. That's what the debt service cost was on the entire $3.2 million, plus the original base rent. What Ms. Gordon did is took 36,200 times the multiplier, the fraction, and that changed in her two letters, because she said she had the denominator wrong in one. Her baker said it was wrong. But in both cases, right at the start of the letter, it says 36,200 times this multiplier. So that's what she applied it to. And she continued to do that. And so what she did is actually, without trying to strike a middle ground, is in fact someplace between what the parties have themselves pushed forward. That's correct. It's the middle ground, and it's what we believe the appellants were actually paying. At trial, the appellant said, you look at just the plain language of the third amendment of the lease, and we were actually owed money. The plaintiff said, you look at the total indebtedness and just the original lease, and we owe baker money. Like you said, Ms. Gordon had a place in the middle that was actually being paid. And in fact, the expert in Exhibit 200, using that calculation, we applied it only to the 36,200. His three, A, B, and C, his third set of assumptions was applying it just to the 36,200, and he came out with an underpayment of $111,000. And that's just looking at the numbers in Exhibit 200. And that's ER 24 through 29. It's the last of the three assumptions. He got the $111,000 number, which is a lot less than the $979,000. And frankly, I can't follow how he did that, which is our second point is on the prejudgment of interest. Yeah, I have a question on that. In Paragraph 9 of the lease, I'm going to be paraphrasing here, but there is a provision that when the lease, when the rental payment is more than a certain number of days behind, then interest shall be charged on it. And then there's another subparagraph that says interest is treated as if it's unpaid rent. So if you put that together, the interest on the rent that becomes due is itself treated as rent, which then is subject to interest at the time that it is due. Why doesn't that operate in essence to be an agreement for the kind of compound interest that's being requested? Two reasons. First, that Paragraph 9d that Your Honor referred to applies to interest on taxes, charges, costs and expenses, not interest on unpaid rent. Well, you stopped before it says together with all interest that may accrue thereon. Thereon modifying taxes, charges, costs and expenses. Well, then if you look at 9b, if the landlord has not received the rent by the tenth of the month, said amount is deemed delinquent. Tenant will incur a penalty equal to 10 percent, and I'm paraphrasing here, and said rent will be interest bearing at the rate of 12 percent retroactive to the first of the month for which the rent is not paid. So why wouldn't that be a cost or expense that would be deemed to be additional rent? Because B says you have unpaid rent. That's a category there, unpaid rent. Subparagraph B deals with unpaid rent. D then deals with something completely different, which is taxes, charges, costs and expenses. B says this is the way we handle B. We have a 10 percent penalty, which the district court found was improper, and then you have a 10 percent interest on this. Twelve percent. Twelve percent per annum, period. That's how you handle that. It doesn't say compound there. And then you go down to you've got a paragraph C that deals with other sums, and then you've got paragraph D, which deals with taxes, charges, costs and expenses. D isn't talking about paragraph B. It's a separate subset. But putting that aside, even if you disagreed with me, if the court disagreed with that, the fact that there's rent due on that, even if it were deemed additional rent, it doesn't say when it's due. It doesn't say that it's due on a monthly basis, that you have to pay, that it's added on, that it's compounded. It could still be simple interest. Until there's a judgment that they've underpaid the rent, there's a finding by a court that they've underpaid the rent. But that rent isn't due. It doesn't say that. It's got to expressly say that under the law unless it expressly says that it's compounded. I mean, you can draw that. Well, the rent is due on a given day. Correct. And the provision for the penalty and interest says that it's due on the first of the month for which the rent wasn't paid on time. So there are dates certain that are written into the lease. There's certainly a due date for the rental payments. Well, it says that the rent is due retroactive to. No, it's not due retroactive. Interest is charged retroactive. Interest will be charged retroactive to. Correct. I don't see where it says that it's due on the date. I just don't see that provision in there. Well, the point of prejudgment interest is you have to know when to count from, and it seems to me that the lease tells you when to count from. I'm looking at that paragraph, and I don't see that the interest on the rent is due on any particular day. It says the rent is due on the first day of the month, and then if you don't pay the rent, you incur interest and penalties that are calculated retroactive to the first day of the month. So looking back today, we go retroactive 10 percent from there, but not that it was due on the first day of the following month. So you don't compound it. You would just go. You start calculating. I understand your position right there. Do you have about a minute and a half if you want to save it? I would save the rest for rebuttal. But, again, the key point is the first point, and it doesn't make any sense to be. . . Well, the one thing we know is that neither the third amendment of the lease nor Ms. Gordon's letter says that the formula for rent escalation is applied to the rent, including the newly acquired debt servicing costs. So the district court has no support in the record for that finding, and the court could go either way and find it's either under the third amendment lease and it applies just to the base rent, or the way Ms. Gordon did it, it applies to the $36,200. But that application of the multiplier to $36,200 would have resulted in an underpayment at most of $111,000 pursuant to the plaintiff's expert's own calculations. Thank you. May it please the Court, Jeffrey Valley for the estate of Baker. I think I would begin with the compound interest issue just to follow the train of thought, Your Honor, was questioning counsel on. Indeed, in the appellant's opening brief, they concede at page 28 and 29 that paragraph 9, they say it means what it says, interest is deemed to be unpaid rent. That answers the question here. Interest is deemed to be additional rent. Paragraph 9 says essentially any expenses, charges, or taxes will be deemed to be additional rent. Appellant concedes that interest pursuant to that provision is deemed to be additional rent. And therefore, the interest. Well, now, as I understand the California law, there has to be an express agreement. It's hard to read an express agreement to pay prejudgment interest on that basis. Can you respond to that? Yes. We've cited two cases that make clear that you don't have to say compound interest. The provisions have to call for interest upon interest. One case involved interest on the principal amount of a mortgage that would be treated as principal bearing interest. We have the same situation with the same intent, that the interest is treated as additional rent subject to the same rights and remedies as rent. And interest is what? It's interest on rent, isn't it? Yes. It's interest. It's interest out of the sky. Well, it's interest on interest because you get the interest on the rent. It is then unpaid interest that gets treated as rent. In other words, the amount that is subject to interest is adjusted in a compounding way. 9D says all taxes, charges, costs, and expenses. I don't see anything about interest in there. Well, interest is a charge, and I think the appellants concede that. They concede that this provision causes the interest to be deemed to be additional rent, and the question is what's the effect of that. Interest is a charge, and it's additional rent subject to interest. I don't see any other reason for that provision, other than to make sure that whatever amounts are owed, the tenant has the same rights and remedies, the landlord has the same rights and remedies that the landlord would have as to rent, which is why the district court found there was a compounding. Let's make sure we're on the same concept. I guess I'm having something of the same concern that Judge Reed has expressed. I look at subparagraph D, and the word rent or unpaid rent or even interest on unpaid rent doesn't appear in there any place. Now, the logic of this transaction has escaped me in lots of respects, but at least in this case it could be said taxes, charges, costs, expenses, those are out-of-pockets that the landlord has to pay out. Maybe those get treated differently than what it fails to receive. But I look at subparagraph D, and it doesn't seem explicitly, at least, to encompass unpaid interest on the rent. At least I don't know what term would encompass it. Well, I think charge would be the other. It would be a strain to say that interest isn't a charge. I mean, interest is charged on amounts owing.  This provision is designed to pick up all charges, all expenses, all taxes, and make sure that everything that is owed to the landlord is treated as additional rent and subject to the rights and remedies. There would be no logic in excluding interest or any reasonable interpretation of an interest charge. No logic in excluding interest cuts against the fact the law requires something expressed to include interest. The presumption of the law is you don't compound. And you're saying, well, there would be no reason except they intend to compound, but it doesn't say compound. So I'd make it say, but I'm saying that an interest charge is a charge. So to say that the charge includes charges other than interest charges, that's what I'm saying I think doesn't make sense. And, indeed, as I say, the appellant's conceded. Page 29 of the opening brief. That provision means, quote, the interest is deemed to be additional rent. Well, that's not the word used in D, though. If you can show me the words additional rent in D, then I'm satisfied. But you're trying to tell me that it has to be within the word charge. I don't see that. It's the last part of D which says these taxes, charges, and costs and expenses, the landlord shall have all the rights and remedies with respect thereto as the landlord has for the nonpayment of basic rent. So with leaving out some of the additional verbiage, you're saying that all charges which the tenant is required to pay here under shall be deemed to be additional rent. And in the event of nonpayment, the landlord has these rights. So I'm leaving out with ellipses. You're saying it's a charge, so all charges, and the tenant's required to pay it here under, meaning under this lease, shall be deemed to be additional rent. Yes. Okay. I'll be deemed to be additional rent. So we have to, in order for you to be correct, we have to interpret one of two things. We have to say that charges include interest charges under 9B. Correct. Or we have to rely on the concession in the brief if it is a concession. Correct. I think there's one question, which is, is an interest charge a charge? If you decide an interest charge is a charge, the rest flows because charges are deemed to be additional rent and the landlord has the same rights and remedies as to the additional rent. Unless there are further questions about that, I'll address the issue about the Third Amendment, which counsel spent some time on. It's quite clear, I think, that the provision, the sentence that the appellant pulls out of the Third Amendment and tries to focus exclusively on that sentence to alter the entire history of this lease, all of the provisions, the First Amendment, and all of the extrinsic evidence, does not purport to amend the formula for charging the CPI on the lease. It doesn't purport to do that. The Third Amendment does amend several things, and it says it is amended here, it is amended there. The paragraph 7 is simply describing a resolution of unpaid rents, and one of the reasons that we know that the unpaid rent does not include CPI only on the base rent is the very resolution described in that paragraph did not apply the CPI only to the base rent. The base rent is $21,500. No one on either side ever either argued that the CPI should only apply to the base rent, calculated it that way, or paid it that way. There's nothing in the record to support that interpretation, and the isolated looking at that one phrase is insufficient to contradict the entire lease. In fact, the CPI formula was not amended in the Third Amendment. So when you say the one phrase, do you mean the first sentence of 7.0? Yes. The reference to base rent. Yes. Well, base rent is a defined term. Well, base rent payable is not. But that paragraph talks about the calculation of the rent due, and as all parties conceded in the trial record shows, Ms. Gordon calculated the rent without objection from Garden Grove, and she applied the CPI to the base rent plus the financing. But did not apply it to the enlarged mortgage payments after the refinancing. As she testified, she was not aware at that point of the refinancing. Well, so what is it you're advocating? Are you advocating we adopt what she calculated and the system she used or something more than that? What the lease says. Her letter is helpful for showing that their position, that only the base rent is subject to the CPI, is not the case. It's extrinsic evidence that shows that's not the case. The lease itself, though, going back to the First Amendment, makes clear that the rent includes two components, the base rent plus the permitted mortgages that were in existence, the existing mortgages, or any permitted mortgages. It clearly says both. And Ms. Gordon testified that her understanding is that the CPI applied to both components. And the only reason she used 36200 is she wasn't aware of the refinancing number. And that's testimony that the trial court accepted. Indeed, their position is contrary to all the extrinsic evidence. Now, I'm not sure in that circumstance exactly what standard of review applies, but where they are saying disregard part of what Ms. Gordon wrote, maybe other parts of it will take, there's at minimum probably a conflict in the extrinsic evidence. There's some tension there, but there's at least as much tension with your position because nothing that she did would incorporate a CPI increase on the enlarged mortgage payments. And she made some mistakes. And this was the way the case was tried. They claimed that her letter constituted an accorded satisfaction, changed the lease. That was her position at trial until I cross-examined Mr. Javile and showed him his own declaration in which he said, in connection with proposing the Third Amendment, we intend to pay, continue to pay under the provisions of the lease. Nothing about any change. And the court found, in hearing Ms. Gordon testify, in hearing Mr. Javile testify, that she testified correctly that she made some mistakes in her letters. She used the wrong denominator. I don't think anyone can dispute that. She used the wrong denominator. She wasn't aware of the refinancing. There was no accord. Did she ever testify that had she been aware of the refinancing, that the CPI increase would have been calculated on the larger amount of indebtedness? Let me see. In our brief at pages 22 and 23, it doesn't maybe quite get there, but it's pretty close. Did you apply the CPI increase formula to the total rent, that is the base rent and the debt service? She answered yes. But you've already told us that what she did, did not incorporate the enlarged payments, debt service payments, because of the refinancing. And so this is, I mean, there are lots of things that puzzle me here, and I don't know that I understand the logic behind it, but just trying to figure out what the district court did and what the parties are arguing for. I mean, you're correct in pointing out there's some tension between the appellant's position and what Ms. Gordon testified to and did, but I see just as much tension between the district court's result and what you're advocating, because I don't know of anything that supports the calculation for the enhanced or larger refinancing. Well, this is where we rely on the lease. You see, you're not relying on the refinancing. The lease says base rent. Well, but the first amendment to the lease, paragraph 6A, which was not amended, says, the tenant shall pay to the landlord rent in the amount of $21,500, that's the base rent, plus an amount equal to the principal and interest payments on any existing permitted mortgages, that's the $14,700, or any permitted mortgages incurred pursuant to section 56.02. That's the refinancing. So the first amendment said we will give you, Garden Grove, the extraordinary right to take out loans and get the cash on our property, but in return the rent has now become flexible because we don't know. The whole purpose of breaking the rent into two components was the parties didn't know what the total rent would be because they didn't know how much or whether Garden Grove would take advantage of the ability to refinance it and take the money. And so the first amendment says there's two components to the rent now. There's something here that really has lost me now, because I've understood this argument to be about the CPI increase. Yes. Well, let's just use some numbers for a minute. Suppose $21,500 said is the base rent, and we've got an additional amount for financing, which used to be $14,000 some. Suppose after the refinancing you get a lot more money lent on the property, and so instead of paying $14,000 you're paying $50,000, big refinancing. Could it possibly be the intent of this to say in addition to paying $50,000 back to the bank on the mortgage, you've got to pay $50,000 to the landlord? No, no, no, no. All of the debt service is paid directly to the bank. See, I think that's where things have gone astray, because the only way to understand this provision is to assume that the $50,000 referenced here is being paid to the landlord so the landlord can pay it to the bank. Nobody thinks that the landlord is going to be paid $21,500 plus $50,000. There's no double payment. The issue of whether it's paid to the landlord who then forwards it to the bank is just a matter of administrative convenience. The parties said you're going to be taking out the refinancing now. From now on you'll pay even the existing mortgage payments directly to the lender, and there's limits on how much refinancing you can take, but you'll pay those directly to the lender. But that's the rent, and part of what was going on here was to try to incentivize the exercise of the purchase, to say there was a three-year freeze on any escalations. After three years, the parties wanted the rent to escalate to incentivize the tenant to purchase it, and they gave them the right to take out the refinancing but said the rent was not. So it makes sense only if you look at it that way. Otherwise, adding the CPI to that amount that's paid over to the bank wouldn't make sense, except as you're now describing it as a means to try to push them out of the nest. To some extent that's right, but I think generally when you think of rent, the landlord sets rent to be in excess of the debt service necessary to cover that property. The only difference here is the tenant had the right to decide whether to refinance and expand the debt service, but under any normal scenario, if you refinance, you're going to want your rent to exceed the debt service. What the appellants are trying to do is say we only want to pay rent on 21,500, a base rent that doesn't include debt service, and that, A, is not what the document says, is inconsistent with the full document and the intent of the parties and directly inconsistent with the extrinsic evidence. And I think there may be no simple solution to this, but, in fact, it is literally what the document appears to say after the Third Amendment, because the Third Amendment does use that term, base rent. It uses the term base rent, but it doesn't purport to amend the provision. It's just said – I say recital in the generic sense in that it's just reciting that there is a formula and this much is owed on it. But I don't think there's anything in the record that was – There are separate recital section in the Third Amendment? There are. And that's why I say I use the term recital generically, not that it's – Why is – does the Third Amendment amend the lease? Yes. The Third Amendment in paragraph 4 – well, I mean, on record 175, it says, Amendment of this section. The terms of the lease is amended to extend to January 15. Amendment of this section. And it says – it's amended as follows. It has a series of amendments, and then the section we're talking about, there are certain things that are happening in connection with this amendment and the amendments. And one of the things that is happening is Garden Grove hadn't paid any rent increases at all under any theory for a year. And this paragraph 7 says, pursuant to the lease, there's supposed to be rent increases, and as of the date hereof, there is currently outstanding the amount of $21,000, and that's going to get paid. But you're saying that does not operate as an amendment to paragraph 6A of the First Amendment? It is not. It doesn't say that. It doesn't – it's not intended to be that. The extrinsic evidence shows that that's not the case. And the next sentence, which talks about the amount that is owed and the amount owed going forward is inconsistent with the notion that the CPI increase would only be on the base rent. Gotcha. And I think they realized that, which was why a trial they tried to seize on Ellen Gordon's letter, where she made mistakes very much in their favor, using the wrong denominator, and even their experts said her calculations made no sense. They said, that's the way this works, Ellen Gordon's letter. That's the case we tried. And we explained, you know, she made mistakes, and she didn't change the lease. And ultimately the Court found that's right. She didn't change the lease, and the meaning of the lease is understood by looking at the provisions of the lease. The extrinsic evidence supports our interpretation. But the lease itself demonstrates our position as well. Counsel, you have exceeded your time by quite a bit, and I think we understand your position. Thank you, Your Honor. Mr. Spiro, you have some time remaining. I think I have time left to make two points. The first point I want to make, because I don't want to lose that, is while at trial the appellants argued that the multiplier should be applied to the base rent, I think that Judge Clifton has hit the correct point, is there's a middle ground. Neither party may have been right, but both parties agreed that the way Ms. Gordon calculated the lease or the rent multiplier was the way that it was supposed to be incorporated into the Third Amendment lease. That's in their trial brief at pages 64 and 65. And they never complained at any point in any letters back to Ms. Gordon that the 36,200 was the number against which the multiplier applied. They complained about the denominator and the fraction, and they complained about whether it was on a monthly basis or an annual basis that you refigured the CPI. But they never complained about the 36,200. So we may have been wrong at trial that it wasn't just the base rent. They may have been wrong, but the parties agreed that it should have been the way Ms. Gordon calculated it, and she multiplied the multiplier times 36,200. The other point is that the argument that the first original lease is still in effect and hasn't been amended is ridiculous. As you just looked at pages 175 through 178, it says right under 175, the parties agree as follows, and then they set out seven, eight, actually nine paragraphs of agreements. Those aren't the recitals. Those are the changes.  But they're not listed as amendments. Paragraph seven is not an amendment in the same way as some of the other paragraphs. For example, paragraph four is called amendment of section 6.0 of first agreement. It says those sections are being amended, but paragraph seven also directly states this is the rental escalation clause. This is what the parties are agreeing to. It's not just a mere recital. It's not just for a rearage. This is how it's to be applied. It's not in the recital section is the point. And so to say that it's a mere recital is. I understand what you're saying. I am out of time, and I'm happy to answer any other questions you have. I suspect you don't have any further. I don't believe that we do. Thank you very much. Thank you. The arguments of both parties have been interesting and helpful, and the case just arguably submitted. Thank you very much. We will stand adjourned for the morning.
judges: Graber, Clifton, Reed